## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| JAMES MICKENS | : | No. 12-616-04 |
| | : | |

### MEMORANDUM

PRATTER, J.                                                                    MARCH _10_, 2022

James Mickens seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), claiming that he is at serious risk of harm from variants of the COVID-19 virus. He also seeks appointment of counsel for this motion. Because Mr. Mickens has declined vaccination and early release would not reflect the serious nature of his crime, the Court denies his motions.

### BACKGROUND

#### A. Mr. Mickens's Request for Compassionate Release

Mr. Mickens was involved in a conspiracy to distribute cocaine and marijuana in 2010 and 2011. During this time period, he made approximately eight trips from Pennsylvania to California to facilitate the purchase of drugs as an employee of US Airways. He used this position to help the conspiracy transport its cash through Philadelphia International Airport without detection.

Mr. Mickens pled guilty to one count of conspiracy to distribute 5 kilograms or more of cocaine and 100 kilograms or more of marijuana under 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and (b)(1)(b), and one count for attempted possession with intent to distribute 5 kilograms or more of cocaine under 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). He was sentenced to 132 months of imprisonment and five years of supervised release. He is now serving his sentence at United States Penitentiary Hazelton.

1

Mr. Mickens is 38 years old. Doc. No. 760, at 2. He suffers from hypertension, chronic kidney disease, and lung damage from a lodged bullet. He also takes daily steroid medications for ear infections. *Id.* Mr. Mickens was offered the Pfizer COVID-19 vaccine on April 6, 2021 and declined it. Doc. No. 760-1, at 66. He also refused the annual influenza vaccine on October 1, 2020. *Id.*

The Government opposes the motion for compassionate release.

**B. The Bureau of Prisons' Response to the COVID-19 Pandemic**

The Bureau of Prisons ("the BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Mar. 10, 2022). The BOP permits almost no outside visitors, limits inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an inmate tests positive, the BOP immediately quarantines that inmate and tests and quarantines all contacts. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); Pub. L. No. 116-136 § 12003(b)(2).

The BOP has offered vaccines to its staff members and inmates. United States Penitentiary Hazelton includes two facilities. Mr. Mickens's facility ("the Camp") currently houses 57 inmates. *USP Hazelton*, Bureau of Prisons, https://www.bop.gov/locations/institutions/haz/ (last visited Mar. 10, 2022). Across the broader USP Hazelton complex, which houses a total of 1,385 inmates, 86 inmates have recovered from COVID-19, and none have died.[1] Tbl., *Hazelton USP*, Bureau of

---

[1] Mr. Mickens argues that one person died at a nearby facility, FCI Hazelton. Doc. No. 764, at 5. However, as Mr. Mickens acknowledges, he is not housed at this separate facility. *Id.*

Prisons, https://www.bop.gov/coronavirus/ (last visited Mar. 10, 2022).  Currently, there are no inmates who have tested positive.  *Id.*

### C. Mr. Mickens's Motion for Appointment of Counsel

Mr. Mickens also requested appointment of counsel, but did not explain why it would be appropriate for the Court to appoint counsel.  Doc. No. 757, at 6.

LEGAL STANDARDS

For the most part, courts "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  But a court can reduce a sentence for "extraordinary and compelling reasons," including a prisoner's medical condition.  § 3582(c)(1)(A)(i).  For a non-terminal illness, the court must find that the prisoner has "a serious physical or medical condition . . . from which he . . . is not expected to recover" "that substantially diminishes [his] ability" to care for himself in prison.  U.S.S.G. § 1B1.13 app. n.1(A)(ii).[2]

In deciding to reduce a sentence, the Court must also weigh the statutory sentencing factors set forth in 18 U.S.C. § 3553(a).  These factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a).

---

[2] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release.  Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).  Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

On all these considerations, the prisoner bears the burden of proof. *United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020). In addition, he must show that he "fully exhausted" his administrative remedies within the prison. 18 U.S.C. § 3582(c)(1)(A).

**DISCUSSION**

Based on his medical condition and the ongoing pandemic, Mr. Mickens requests that the Court reduce his sentence to time served.

**I.    Mr. Mickens has not shown an "extraordinary and compelling reason" for his release**

Mr. Mickens presents the COVID-19 risk factors of hypertension and chronic kidney disease. Doc. No. 759, at 14. Mr. Mickens's medical record also reflects that he also experiences intermittent pain from a bullet retained in his chest from a 2003 wound. Doc. No. 760-1, at 1. Mr. Mickens's conditions are mild and stabilized by prescription medication. *Id.* at 27–28.

Mr. Mickens expresses concern that his risk factors and BOP's "ineffective management during the pandemic" increase his risk of death or serious injury from COVID-19. Doc. No. 757, at 5. However, demonstrating an "extraordinary and compelling" circumstance requires "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Mr. Mickens's conditions do not prevent him from caring for himself, even given the risk of COVID-19 infection.

Mr. Mickens has declined the Pfizer vaccine, which has been documented as highly effective against COVID-19 and identified variants, particularly with a booster shot.[3] *See New*

---

[3] Mr. Mickens notes that he declined the Moderna vaccine because, at the time, it was not fully authorized by the FDA like the Pfizer vaccine. Doc. No. 764, at 2. But his medical records show that he was offered the Pfizer vaccine, not the Moderna vaccine. Doc. No. 760-1, at 66. Either way, Mr. Mickens undercuts this argument by describing a list of additional reasons he would refuse a vaccine anyways, including

4

*CDC Studies: COVID-19 Boosters Remain Safe, Continue to Offer High Levels of Protection Against Severe Disease Over Time and During Omicron and Delta Waves*, Centers for Disease Control & Prevention (Feb. 11, 2022), https://www.cdc.gov/media/releases/2022/s0211-covid-19-boosters.html (last visited Mar. 10, 2022). The widespread availability of COVID-19 vaccines virtually eliminates the risk of death or serious injury as a basis for compassionate release. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (citing *United States v. Burgard*, 857 F. App'x 254, 255 (7th Cir. 2021)).

A prisoner simply cannot expect success with a "claim[ed] fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk." *United States v. Garcia*, No. 14-cr-20035, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021); *see also United States v. Gonzalez Zambrano*, No. 18-cr-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them."). "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting that the "possibility" that the virus "may spread to" a person in a prison "cannot independently justify compassionate release").

In his reply, Mr. Mickens argues that he takes a daily steroid medication and that there is research suggesting that steroid medications lower immune responses to vaccines generally. Doc.

---

historical concerns about other drugs authorized by the FDA as safe and effective that, he argues, later proved to have safety and efficacy concerns. Doc. No. 764, at 3.

No. 764, at 4. However, the article cited by Mr. Mickens *recommends* vaccination for such immunocompromised patients and explores booster shots as a way to bolster the protection in light of the lower immune response. Nancy Schimelpfenig, *These Prescription Drugs May Reduce the Efficacy of COVID-19 Vaccines*, Healthline, https://www.healthline.com/health-news/these-prescription-drugs-may-reduce-efficacy-of-covid-19-vaccines (May 26, 2021). Indeed, the CDC now recommends booster shots for patients who are moderately or severely immunocompromised. *Guidance for COVID-19 Vaccination for People Who Are Moderately or Severely Immunocompromised*, Centers for Disease Control & Prevention, https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html#vaccination-people-immunocompromised (last visited Mar. 10, 2022). Therefore, Mr. Mickens's prescription steroid use is a reason to *accept* the vaccine, not to decline it.

Mr. Mickens also cites cases where "numerous courts have not used vaccination[ ] status as a benchmark when determining Compassionate Release." Doc. No. 764, at 4. However, these cases all date from March and April 2021, at a time when the COVID-19 vaccines were just becoming available. And Mr. Mickens's characterization of the cases is inaccurate. For example, he cites an opinion granting compassionate release in *United States v. Swint*, decided on March 31, 2021. In the opinion, the court notes that the movant *did* receive the first dose of the Moderna vaccine before the date of the decision, and focused on the movant's advanced age and the excessive nature of his life sentence in granting relief. *United States v. Swint*, No. 94-cr-276, 2021 WL 1210111, at *5 (E.D. Pa. Mar. 31, 2021).

Because Mr. Mickens could "provide self-care within the environment of a correctional facility" by accepting a COVID-19 vaccine that would reduce his risk of severe illness or death,

he has not demonstrated an extraordinary or compelling circumstance to justify compassionate release. U.S.S.G. § 1B1.13 app. n. 1(A)(ii).

## II.    The sentencing factors counsel against releasing Mr. Mickens

Even if Mr. Mickens could demonstrate that he presents an extraordinary and compelling risk of contracting severe COVID-19 after refusing a vaccine, the Court would deny compassionate release based on the § 3553(a) factors.

During his time in prison, Mr. Mickens has been disciplined once, for a contraband cell phone. And he has served approximately 111 months of his 132-month sentence, including credit for good conduct.

However, Mr. Mickens's sentence already reflects the serious nature of his crime. He was part of a major drug trafficking conspiracy. The Court has already sentenced Mr. Mickens well below the sentencing guidelines range of 188 to 235 months. Doc. No. 759, at 28. Further reduction would not reflect the seriousness of his crimes, promote respect for the law, provide just punishment, or afford adequate deterrence from future crime by Mr. Mickens.[4] *See United States v. Page*, 859 F. App'x 635, 636–37 (3d Cir. 2021) (affirming denial of compassionate release on the same grounds for a defendant who pled guilty to a drug trafficking conspiracy involving 1–3 kilograms of heroin and who had about 12 months remaining in a 120-month sentence).

## III.    Appointment of counsel

In requesting appointment of counsel, Mr. Mickens does not provide any reasons. Courts considering a request for counsel by an indigent civil litigant apply the following factors: (1) the plaintiff's ability to present his or her own case;  (2) the difficulty of the particular legal issues;

---

[4] As to the factor of danger to the community, the Court recognizes that Mr. Mickens does not have a record of violent crime, but notes that one of the health risk factors forming the basis of his motion is a *gunshot wound* that long predates the drug activity that formed the basis of his current conviction.

(3) the degree to which factual investigation will be necessary and the ability of the plaintiff to do such investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993). Here, the following *Tabron* factors weigh against appointing Mr. Mickens counsel for his motion for compassionate release: (1) although Mr. Mickens does not explain his education, literacy, or prior litigation experience, he has presented his own case adequately, including the submission of a reply brief with citations to case law; (2) his motion does not present difficult legal issues; (3) no factual investigation is required beyond the reports already submitted; (5) this motion does not turn on credibility determinations; and (6) no expert testimony is required. Therefore, the Court will deny Mr. Mickens's request for appointment of counsel.

## CONCLUSION

For these reasons, the Court denies Mr. Mickens's motion to reduce his sentence and request for appointment of counsel. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

8